Baldwin, J.
I think it clear, that according to the original scheme of the mutual assurance society against fire on buildings, none but an unincumbered fee simple estate was insurable. This is obvious from the nature and extent of the indemnity contemplated, and the means by which it was to be furnished. It was intended that the society should be perpetual, that the security against losses should be permanent, and that its resources should be supplied, not from accruing profits, but from a perennial income, to be yielded by a capital to be raised by the contributions of its members. The plan of mutual assurance was simple, and founded upon the idea of equality amongst the members in the principles of indemnity, contribution and authority. *665 The premiums and quotas were to be apportioned according to the value of the property, to bo ascertained by an appraisement, not of partial interests but of the entire and unlimited estate; and that appraisement furnished the measure of compensation to the insured in case of loss. The owner of property declaring for insurance bound not only himself, but the property itself, not merely during his individual ownership, but in the hands of his heirs, executors and assigns, and subjected the same to be sold, if necessary, for the payment of the quotas. And provision was made, in case of the declarant’s selling, mortgaging, or otherwise transferring the property, for constituting the purchaser or mortgagee a member in his stead ; and he was required to apprize the purchaser or mortgagee of the assurance, and endorse to him the policy thereof.
The original scheme might, it is true, have authorized the insurance of partial or limited interests ; but that would have required special provisions adapted to such a purpose. None such are to be found in the original acts of incorporation, nor in the original constitution, rules and regulations of the society ; and a general declaration for insurance, such as is made by the absolute fee simple proprietor, must have been wholly inappropriate and abortive; for it would have furnished no criteria for graduating the premiums and quotas, nor for fixing the degree or rate of indemnity, nor for apportioning and distributing the compensation amongst successive or partial owners, or securing it to a substantial instead of a nominal owner, nor any authority to one to bind another by his declaration. Moreover, in the case of property subject to incumbrance, the effect of a general declaration, if operative, might and often w'ould have been, to defeat the lien of the society, by means of the paramount title of the incumbrancer. I cannot doubt, therefore, that the original plan of the institution, as developed by the acts of 1794 and *666 ^ not contemplate the insurance of mortgaged property. The first authority for insurance by persons having limited interests is to be found in the act of 27th January 1803, Sess. Acts of 1802-3, p. 7. ch. 5. by which the society was enabled to insure buildings held by tenants for life, widows in right of their dower, and guardians or trustees for orphans} and the declarations of such persons were made obligatory upon the fee simple ownership, but with a provision giving to a tenant for life, in case of loss, only the interest upon the compensation during his estate, and at his death giving the principal money to those entitled in remainder or reversion. The next legislative enactment on this subject we, find in the act of January 29th 1805, Sess. Acts of 1804-5* p. 23. ch. 24. by the 10th section of which the society was authorized to form rules and regulations for fixing the quantum of interest to be insured.
It was, I presume, under the authority of these two last mentioned acts, that the society adopted the provisions in regard to partial and limited interests, to be found in sections 4-12 of the ninth article of “ the constitution, rules and regulations of the mutual assurance society against fire on buildings of the state of Virginia, as revised and adopted subsequent to the 16th of February 1809, and in force on the 15th of May 1819.” The 7th and Sth sections are as follows:
“ Sect. 7. Any mortgagees, trustees, or creditors for whose benefit buildings may be conveyed in trust, subscribing their declarations as such, may insure such buildings, and such insurance shall be effectual after payment of the premium, and continue' to be so until the first day of April in the following year, but no longer, unless the annual requisition or quota shall then be paid at the general office of assurance in the city of Richmond, between the hours of 9 a. m. and of 3 p. m. in which case the assurance aforesaid shall continue to *667 be good and effectual until sunset of the first day of April then next succeeding; when, for the effectual assurance of such buildings thereafter, the mortgagee, trustee or creditor shall again pay the annual requisition or quota, and failing to do so, shall forfeit all benefit of the assurance until such quota shall be paid with interest; and so of each succeeding year: provided, that such insurance shall continue to be in force only so long as the interest of such mortgagee, trustee or creditor may exist; and in case of accidental burning of the insured premises, that the amount to be paid by this society shall not exceed the sum due to him with interest thereon: provided also, that the sum to be paid for such loss shall not exceed the amount insured, after deducting four fifths of the salvage.
“ Sect. 8. Any mortgagor or debtor who may have conveyed buildings, subscribing his or her declaration as such, may make a good and effectual insurance, on the terms and conditions which are required of a mortgagee, trustee, or creditor for whose benefit buildings may have been conveyed in trust: provided, that in case of accidental loss by fire, the sum to be paid to such mortgagor or debtor shall only be the balance after deducting the amount due to the mortgagee or creditor with interest; and the amount so due to such mortgagee, trustee or creditor (if not greater than the amount insured) after deducting salvage, shall be paid to him or her, on producing proper evidence of his or her claim on the buildings so insured and consumed by fire.”
These provisions, it is manifest, are wholly inapplicable to an attempted assurance in 1796, the period of the declarations in question; and they only serve to illustrate how utterly impracticable it has ever been to effect an insurance of mortgaged property, under a general declaration as the absolute fee simple owner. According to the principles of insurance law, a mate *668 rial misrepresentation, whether by fraud, or which is only the effect of accident, negligence, inadvertence or mistake, is fatal to the contract. 1 Marsh. on Ins. 347. There was no moment of time between the 30th of 1796 and the 23d of May 1820, at which, if the buildings had been destroyed by fire, the society would have been bound to render to the declarant Ingram, or his representatives or assigns, a single dollar of compensation. And the only question is whether the contract, thus null and void as against the society, can be enforced against the other party. If it can, it is not upon the principles of the general law of insurance; according to which, if through mistake, misinformation, or any other innocent cause, an insurance be made without any interest whatsoever in the thing insured, or to a much larger amount than its real value, in the one case the insurer shall return the whole premium, in the other he shall return upon all above the true value. For the premium paid by the insured, and the risk which the insurer takes upon himself, are considerations each for the other; they are correlatives, whose mutual operation constitutes the essence of the contract of insurance. The insurer shall not be exposed to the risk without receiving the premium; nor shall he retain the premium, which was the price of the risk, if in fact he runs no risk at all, though it be by the neglect, or even the fault of the party insuring, that the risk be not run. 2 Marsh. on Ins. 548. 549. Stevenson v. Snow, 3 Burr. 1240. And in several cases, even where the policy was declared void for fraud committed by the insured, he obtained a return of the premium; but it is now settled that in all cases of actual fraud on the part of the insured, the underwriter shall retain the premium. 2 Marsh. on Ins. 559-63.
In the present case, there is no evidence or even imputation of fraud in regard to the conduct of the declarant ; and there is the same reason for ascribing his at *669 tempt at insurance to misapprehension, as existed in the case of The Mutual Ass. Co. v. Mahon, 5 Call 517. in which it was held that a leasehold interest was not insurable, and the society therefore not liable upon the policy, but that the declarant was entitled to a return f of the premium. I can perceive nothing in the peculiar structure of this corporation to take the case out of the influence of the general principles above mentioned. It is true that the members of the association are the assurers as well as the assured ; but the membership, as I apprehend, is created by the insurance, and if there be no insurance there is no membership.
I express no opinion upon the question whether an action could be maintained by a declarant against the society to recover back quotas he has paid upon a void insurance. That question does not arise here. In the present case, the society is endeavouring to enforce payment of the quotas which accrued prior to its having incurred any hazard of loss, and after the lapse of many years from the time of the inception of its rights as now asserted, without any effort, so far as appears from the record, to prosecute them to a recovery. The premium actually paid is an ample compensation for any expense or disappointment incurred by the society, and there is no consideration of justice to move the judicial tribunals, especially a court of conscience, to an active interposition in behalf of such a pretension. It is true that the members of the society are bound by its constitution, rules and regulations, so far as made conformably to law; and that by the 7th section of the 10th article of the revised constitution, rules and regulations, it is declared that “ any insurance made by any person who shall, in the declaration of assurance, have misrepresented, or failed to represent truly, the capacity in which he acted when he subscribed such declaration, or his claim on or interest in the buildings offered for insurance, shall be ineffectual; the policy, if any shall *670 have been issued, shall be void, and the premiums or quotas paid or due thereon shall be forfeited.” But this regulation is evidently merely prospective, and has no application to declarations for insurance previously macje. and it js therefore unnecessary to consider what 7 J would be its effect and authority, if intended to be retrospective.
The resolution of the standing committee of the society, of the 23d of May 1820, by which they declared that the insurance in question should be placed in all respects on the same footing as if Ingram, had possessed, at the time of declaring the property for assurance, a complete unincumbered fee simple therein, having been made without the concurrence of the representatives of the declarant, can give the society no rights which it did not previously possess, and rather indicates an attempt to give vitality to an act which the society had previously regarded as invalid.
My opinion is, that the decree of the circuit court ought to be reversed, and the bill dismissed with costs.
The other judges concurring, decree reversed and bill dismissed with costs.